## RUPLEY v. WELCH et al.

THE construction of a reservoir across the bed of a ravine, for the purpose of collecting the water flowing down the same, to be used in irrigating a garden, or fruit trees, gives to the party constructing the same, a vested right of property in the reservoir, and the right to have the water flow into the same, of which he cannot be divested by persons subsequently entering for mining purposes; and a Court of Equity will enjoin miners thus entering, from injuring the reservoir, or diverting the water therefrom.

A person entering upon and possessing public lands, under the Possessory Act of April 20th, 1852, holds the lands subject to the right of any person to enter upon it, and work the mines of precious metals thereon. This right of the miner to enter upon lands thus held, is subject to such regulations and restrictions as the Legislature may see fit to impose; and the Act of April 25th, 1855,

Rupley *v.* Welch.

compelling the miner to give bonds to the owner of crops growing on such lands, before he can use the mineral lands on which crops are growing, is but a regulation of a right given by the Act of April 20th, 1852, and is not liable to any constitutional objection.

Where the miner, who desires to dig up crops growing on land held under the Possessory Act, offers to give the proper bond required by the Act of 1855, and the owner of the crops refuses to receive it, the miner acquires by such offer a right to enter and mine on the land, and cannot be treated as a trespasser. The miner is liable, however, for the damage to the growing crops, caused by his act, and if the owner of the crops should demand of the miner payment of the damage caused to the crop, and the miner should refuse to pay, a Court of Equity would restrain him from further working.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

This action was commenced on the thirtieth day of November, 1860. The reservoir of the plaintiff was constructed across the bed of the ravine, and defendants were digging and sluicing immediately above the reservoir, and had excavated a ditch, by which they had diverted the water from the reservoir. The other facts are stated in the opinion of the Court.

*Hume & Sloss*, for Appellants.

The Court erred in refusing to order judgment for plaintiff, on the complaint and answer. The answer does not put in issue any material allegation of the complaint. An answer which does not, when the complaint is verified, contain a specific denial of each allegation controverted by the defendant, is to be disregarded. Every material allegation of the complaint not specifically controverted by the answer, shall, for the purposes of the action, be taken as true. (Pr. Act, 46, 65; *Dewey* v. *Bowman*, 8 Cal. 149; *Humphreys* v. *McCall*, 9 Id. 59; *Burke* v. *Table Mountain Water Co.*, 12 Id. 403.)

Conceding the correctness of the proposition laid down by this Court, in *Burdge* v. *Smith* (14 Cal. 383), that " there is no presumption that the person who goes upon mineral land is a trespasser," we insist that in this instance, that presumption is overthrown by the showing of the complaint—that the defendants had entered the plaintiff's inclosure, had destroyed, were actually engaged in

destroying, and declare their intention to be, to continue to destroy the crops of the plaintiff.

*McCallum & Upton*, for Respondent.

We proceed to notice the propositions of the appellant, that the Court erred in refusing to order judgment for the plaintiff, on the pleadings.    It is a sufficient answer to say, that defendants' answer sets up a distinct affirmative defense; setting up their offer to comply with the statute, and plaintiff's refusal to accept (Stat. 1855, 145), to which defense there was no demurrer, or objection of any kind, but to which plaintiff filed his replication, denying the plea; upon which issue the District Court found for the defendants.    That the defendants had the right to enter, as miners, upon such land, and for the purpose of mining, this Court has decided in so many cases, that it is not regarded as an open question.    (*Burdge* v. *Smith et al.*, 14 Cal. 380 ; *Hicks* v. *Bell*, 3 Id. 227 ; *Stokes* v. *Barrett*, 5 Id. 39 ; *Irwin* v. *Phillips*, Id. 146, 97, 37 ; *Conger* v. *Weaver*, 6 Id. 548.)

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This action is brought by the plaintiff to recover damages of the defendants, for entering upon certain inclosed premises, and digging up and sluicing the same, for mining purposes ; and for an injunction to restrain them from continuing these mining operations.

The premises are described in the complaint as a field of ten acres, inclosed with a rail fence, part of a larger tract in the plaintiff's possession, on which ten acres were growing crops of grain, consisting of barley, wheat, Chile, and red clover, and other grasses of natural and planted growth.    The plaintiff also avers, that near the place where the defendants are at work, he has a garden and fruit trees, and for the purpose of irrigating them, he constructed a reservoir to receive the water flowing down a ravine on the premises in question ; and that the works of the defendants will divert the water from the reservoir, and render it useless for the purpose of irrigating the garden and fruit trees.    It does not clearly appear where the reservoir is located, but the inference, from the mode of

stating is, that the reservoir, and the garden and fruit trees, are not on the ten acres. The plaintiff also avers, that he has suffered damages to the amount of two hundred dollars, from these acts of the defendants.

The answer directly admits some of these allegations, and the residue are to be taken as true, because the complaint is verified; and the answer only controverts them by a general, instead of a specific denial of each allegation. (Civil Pr. Act, 48, 65.)

But the answer sets up, as affirmative matter of defense, that the premises are public lands, and only held by the plaintiff by a possessory title, under the act entitled "An Act prescribing the mode of Maintaining and Defending Possessory Actions on Public Lands in this State," passed April 20th, 1852; that they contained mines of precious metals; and that the defendants entered upon them for mining purposes; and that before making such entry they offered to execute to the plaintiff their bond with good and sufficient surety, in accordance with the provisions of an act entitled "An Act to protect Owners of Growing Crops, Buildings, and other Improvements in the Mining Districts of this State," approved April 25th, 1855; and that the plaintiff refused to accept the same; and they aver that they are now ready and willing to execute such bond, in accordance with the Statute of 1855, aforesaid. These allegations of the answer are also to be taken as true, because they are not controverted by the replication. (Civil Prac. Act. Sec. 65.)    A judgment was rendered in favor of the defendants, from which the plaintiff has appealed.

The main question involved in this case is the validity of the Act of April 25th, 1855; the defendants claiming that, having complied with the provisions of that act, they lawfully entered upon plaintiff's land, and were authorized to commit the acts complained of. The threatened diversion of water from plaintiff's reservoir is a clear violation of a vested right of property, acquired by the plaintiff by virtue of his prior appropriation of the water, and of which he cannot be divested for any private purposes or for the benefit of a few private individuals.

But the injury to the growing crops presents a different question. The Statute of 1852 relating to possessory actions, provides that

the possession of public land, containing mines of the precious metals, for agriculture and grazing purposes, shall not preclude the working of such mines by any person desiring to do so.   The cultivation of the land, and raising crops of grain or grass, is a use of the land purely for agricultural and grazing purposes, and therefore clearly comes within the proviso of the act.   The plaintiff's possession of the land was subject to this right of any person to enter upon the land, and work the mines of the precious metals thereon. This right of the miner has been fully recognized by this Court, but it has invariably been held to apply only to the possession of public lands held purely for agricultural and grazing purposes, and not extended beyond them.   (5 Cal. 36, 97, 308, 395 ; 14 Id. 380.)

The Act of April 25th, 1855, provides that whenever any person shall, for mining purposes, desire to occupy or use any mineral lands then occupied by growing crops, etc., such person shall first give bond to the owner of the growing crop, etc., that the obligor shall pay to the obligee any damage sustained by reason of the destruction of the growing crops, etc., of the obligee.   So far as this act relates to "growing crops," such as are usually raised upon lands used exclusively for agricultural or grazing purposes, it merely regulates a right previously vested in the miner, and to which the plaintiff's possession was subject ; and to that extent, it is not liable to any constitutional objection.   The right reserved to the miner, by the Act of 1852, is subject to such regulations and restrictions as the Legislature may see fit to impose ; and the Act of 1855 is but a regulation of that right, requiring a bond to be given before it can be exercised.   The defendants in this case, complied with the requirements of the Act of 1855, so far as they could, by offering to give the proper bond, which the plaintiff refused to receive.   This was all that the defendants were required to do, before entering upon the premises.   They could not tender such a bond as the act requires, because the law requires the sum to be fixed by three disinterested persons, one of whom was to be selected by the plaintiff; and this he refused to do, by refusing to receive any bond.   The entry of the defendants upon the land upon which the growing crops were, for mining purposes, was therefore lawful, and cannot properly be treated as a trespass.   They

are, however, liable for the damage to the growing crops caused by their acts; and if the plaintiff should demand of them the bond required by the statute, or they should refuse to pay the damages thus caused by them, they might then be restrained from all further working or trespassing upon the land. But no such case is presented by the record in this action.

It follows, from these views, that the Court below erred in refusing the injunction against injuring the plaintiff's reservoir or diverting water therefrom.

The judgment is therefore reversed, and the cause remanded for further proceedings.